[Cite as *Federer v. Ohio Dept. Natl. Resources, Div. of Wildlife*, 2015-Ohio-5368.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Adam Federer, | : | |
| Appellant-Appellee, | : | |
| | | No. 15AP-104 |
| v. | : | (C.P.C. No. 14CV-9198) |
| The Ohio Department of Natural Resources, Division of Wildlife, | : | (REGULAR CALENDAR) |
| | : | |
| Appellee-Appellant. | : | |
| | : | |

D E C I S I O N

Rendered on December 22, 2015

*Tyack, Blackmore, Liston & Nigh, Co., L.P.A.*, and *Jonathan T. Tyack*, for Adam Federer.

*Michael DeWine,* Attorney General*, Matthew R. Cushing, Nicole Candelora-Norman, Daniel J. Martin*, and *Gerald E. Dailey*, for the Ohio Department of Natural Resources, Division of Wildlife.

APPEAL from the Franklin County Court of Common Pleas.

BROWN, P.J.

{¶ 1} The Ohio Department of Natural Resources, Division of Wildlife ("ODNR"), appellant, appeals a judgment of the Franklin County Court of Common Pleas, in which the court reversed ODNR's decision finding a bobcat is a "dangerous wild animal" pursuant to R.C. 935.01.

{¶ 2} Adam Federer, appellee, has owned a bobcat since 2003. Since 2003, ODNR has issued non-commercial propagating licenses to Federer for his bobcat

pursuant to R.C. 1533.71. However, in September 2012, the Ohio Legislature enacted the Dangerous Wild Animals and Snake Act ("the Act") to regulate the possession of dangerous wild animals, as defined by R.C. 935.01. The Act is administered by the Ohio Department of Agriculture ("ODA"). Pursuant to R.C. 1533.71(I), ODNR cannot issue a license for an animal that is defined as a dangerous wild animal under R.C. 935.01 of the Act.

{¶ 3} In March 2014, appellee applied to ODNR for a license for his bobcat pursuant to R.C. 1533.71. On March 25, 2014, ODNR denied appellee's license application. Appellee appealed ODNR's decision. On July 7, 2014, a hearing officer for ODNR issued a report and recommendation upholding the denial of the license. The hearing officer found that, because a bobcat is considered a species of the lynx genus, and "lynxes" are defined as dangerous wild animals under R.C. 935.01, ODNR was prohibited by R.C. 1533.71(I) from issuing the license. On August 26, 2014, ODNR issued a final adjudication order adopting the report of the hearing officer.

{¶ 4} Appellee appealed ODNR's order to the Franklin County Court of Common Pleas. On January 15, 2015, the court issued an opinion and judgment entry reversing ODNR's order. The court found that R.C. 935.01(C) used common names for animals and specifically omitted bobcats. The court further found that use of the term "lynxes" in that section was not meant to include the entire lynx genus. ODNR appeals the judgment of the common pleas court, asserting the following assignments of error:

> [I.] The common pleas court erred in its interpretation of R.C. §935.01.
>
> [II.] The common pleas court erred and abused its discretion by making an independent finding not supported by the record that the Federer bobcat was "domesticated."

{¶ 5} ODNR argues in its first assignment of error that the common pleas court erred in its interpretation of R.C. 935.01. Under R.C. 119.12, a common pleas court, in reviewing an order of an administrative agency, must consider the entire record to determine whether reliable, probative, and substantial evidence supports the agency's order and the order is in accordance with law. *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110-11 (1980). The common pleas court's review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in

which the court must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof. *Lies v. Veterinary Med. Bd.*, 2 Ohio App.3d 204, 207 (1st Dist.1981), quoting *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280 (1955). The common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but the findings of the agency are by no means conclusive. *Conrad* at 111. The common pleas court conducts a de novo review of questions of law, exercising its independent judgment in determining whether the administrative order is in accordance with law. *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471 (1993).

{¶ 6} An appellate court's review of an administrative decision is more limited than that of a common pleas court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). The appellate court reviews factual issues to determine whether the court of common pleas abused its discretion in determining that the administrative action either was or was not supported by reliable, probative, and substantial evidence. *Alternative Residences, Two, Inc. v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 04AP-306, 2004-Ohio-6444, ¶ 17. "Abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Absent an abuse of discretion, a court of appeals may not substitute its judgment for that of an administrative agency or the common pleas court. *Pons* at 621. An appellate court, however, has plenary review of purely legal questions. *Big Bob's, Inc. v. Ohio Liquor Control Comm.*, 151 Ohio App.3d 498, 2003-Ohio-418, ¶ 15 (10th Dist.).

{¶ 7} R.C. 1533.71 permits persons to apply for certain types of licenses to raise, sell, or propagate certain animals. However, Section I provides that "[a] license shall not be issued under this section to raise or sell a dangerous wild animal or restricted snake as defined in section 935.01 of the Revised Code." R.C. 1533.71(I).

{¶ 8} R.C. 935.01 provides, in pertinent part:

> (C) "Dangerous wild animal" means any of the following, including hybrids unless otherwise specified:
>
> (1) Hyenas;
>
> (2) Gray wolves, excluding hybrids;

(3) Lions;

(4) Tigers;

(5) Jaguars;

(6) Leopards, including clouded leopards, Sunda clouded leopards, and snow leopards;

(7) All of the following, including hybrids with domestic cats unless otherwise specified:

(a) Cheetahs;

(b) Lynxes, including Canadian lynxes, Eurasian lynxes, and Iberian lynxes;

(c) Cougars, also known as pumas or mountain lions;

(d) Caracals;

(e) Servals, excluding hybrids with domestic cats commonly known as savannah cats.

(8) Bears;

(9) Elephants;

(10) Rhinoceroses;

(11) Hippopotamuses;

(12) Cape buffaloes;

(13) African wild dogs;

(14) Komodo dragons;

(15) Alligators;

(16) Crocodiles;

(17) Caimans, excluding dwarf caimans;

(18) Gharials;

(19) Nonhuman primates other than lemurs and the nonhuman primates specified in division (C)(20) of this section;

(20) All of the following nonhuman primates:

(a) Golden lion, black-faced lion, golden-rumped lion, cotton-top, emperor, saddlebacked, black-mantled, and Geoffroy's tamarins;

(b) Southern and northern night monkeys;

(c) Dusky titi and masked titi monkeys;

(d) Muriquis;

(e) Goeldi's monkeys;

(f) White-faced, black-bearded, white-nose bearded, and monk sakis;

(g) Bald and black uakaris;

(h) Black-handed, white-bellied, brown-headed, and black spider monkeys;

(i) Common woolly monkeys;

(j) Red, black, and mantled howler monkeys.

"Dangerous wild animal" does not include a domesticated animal that is considered livestock as defined in section 901.70 of the Revised Code.

{¶ 9} Accordingly, the issue before us is whether the term "lynxes" under R.C. 935.01(C)(7)(b) includes bobcats. We first note that ODNR initially argues that bobcats are included within the term "lynxes" because a bobcat is within the scientific and technical meaning of the term "lynxes." ODNR points to the testimony of ODNR's expert, Dr. Melissa Simmerman, that the taxonomical rank of "lynx rufus" defines bobcat as a species of lynx, and a bobcat's genetic and physical characteristics make it a species of lynx. However, appellee does not contest that bobcats are a species within the lynx genus, and we do not find the fact particularly useful to our analysis. The crux of the matter is

what the General Assembly meant by the word "lynxes" and not the scientific or technical meaning of "lynxes."

{¶ 10} To answer the question of what the General Assembly meant by "lynxes," we, like the trial court, find the best course is to consider the language and overall scheme of R.C. 935.01. The trial court found that the legislature used specific common names for different species of animals to define whether they were dangerous wild animals and purposefully omitted bobcats. The trial court concluded that, because of the listing of specific animals, the term "lynxes" could not be broadly interpreted to be the genus. We agree. R.C. 935.01 uses the common names of the animal species included in the provision. Nowhere in R.C. 935.01 did the legislature identify an animal using its scientific genus. The term "bobcat" is the common name for a species within the lynx genus and is not specifically included in the provision. The legislature used everyday language and terms to describe the animals included in R.C. 935.01 and did not employ scientific or overly technical language. ODNR's expert, Dr. Simmerman, agreed that all of the other names used in R.C. 935.01 are the common names for those animals and none of the other animals listed use scientific genus names.

{¶ 11} That the term "lynxes" refers to the common name for a species instead of a genus is supported by R.C. 935.011, which provides that, although "[t]he director of agriculture may recommend to the general assembly <u>species</u> of animals to be included in the definition of 'dangerous wild animal[,]' * * * in section 935.01 of the Revised Code[,] [t]he director shall not add <u>species</u> of animals to be included in the definition of 'dangerous wild animal' * * * without the approval of the General Assembly." (Emphasis added.) The language of R.C. 935.011 focuses on the addition of species to the list, suggesting that R.C. 935.011 is already comprised of a list of species.

{¶ 12} The wording of R.C. 935.01(C)(7)(b) also supports the conclusion that "lynxes" refers to a species and not a genus. It is telling that the legislature used the plural form "lynxes." The genus name is "lynx." By utilizing "lynxes," the legislature was referring to multiple species that are referred to by the common name of "lynx," of which bobcats are not one. The common name for "lynx rufus" is not "lynx," but bobcat.

{¶ 13} We also note that ODA's inclusion of bobcats under Ohio Adm.Code 901:1-4-05 does not persuade us that bobcats are a dangerous wild animal under R.C. 935.01,

and the wording of that rule also supports our view that "lynxes" in R.C. 935.01 does not refer to the genus. Ohio Adm.Code 901:1-4-05 provides that the rule "applies exclusively to the <u>species</u> listed as dangerous wild animals in divisions (C)(3) to (C)(7) of section 935.01 of the Revised Code." (Emphasis added.) Subsection (D) of Ohio Adm.Code 901:1-4-05 provides that the subsection applies to "common names: caracal, serval, canada lynx, eurasian lynx, iberian lynx, and bobcat." Obviously, the bobcat species is not listed in R.C. 935.01(C)(7), so ODA's inclusion of it in this list is in violation of R.C. 935.011, which, as indicated above, prohibits ODA from including a species in the definition of dangerous wild animals without the approval of the General Assembly. Furthermore, ODA's use of the phrase "<u>species</u> listed * * * in (C)(7)" in Ohio Adm.Code 901:1-4-05 also supports the view that the word "lynxes" in R.C. 935.01(C)(7) denotes species and not genus. (Emphasis added.)

{¶ 14} ODNR's argument regarding the polar bears actually supports the trial court's interpretation of "lynxes." ODNR claims that the term "polar bears" is also not included in R.C. 935.01, yet there is no dispute that ODA may include polar bears in its rules as being a dangerous wild animal because that species is included under the broad term "bears" in R.C. 935.01(C)(8). However, R.C. 935.01(C)(8) uses the word "bear" to signify a general class of species identified by the common name "bear," and does not use the genus, "ursus." In the same way, R.C. 935.01(C)(7) uses the word "lynxes" to signify a general class of species identified by the common name "lynx," and does not use the genus "lynx."

{¶ 15} The common pleas court's reading is consistent with the testimony of Scott Zody, the chief of the division of wildlife at ODNR. Zody testified that he was the chair of a task force that submitted to the legislature recommendations for ways to regulate certain dangerous and wild animals in Ohio. During the task force's meetings, there were in-depth discussions about bobcats, and the task force concluded that bobcats should not be included as dangerous wild animals in its recommendations. The recommendations were submitted to the legislature, and R.C. 935.01 was enacted thereafter, although Zody did not know what the legislature considered in drafting the statutory language. Zody also testified that the task force recommended that Canadian lynxes, Eurasian lynxes, and Iberian lynxes be included in the definition of dangerous wild animals, which the

legislature subsequently included in R.C. 935.01. Zody also noted that the task force recommended to the legislature that coyotes also be left out of the definition of dangerous wild animals, and the legislature likewise did not include coyotes in R.C. 935.01. ODNR contests the trial court's consideration of Zody's testimony in this respect. However, although we agree that Zody's testimony is not conclusive of the legislature's intent, it is worthy of consideration that the task force recommended to the legislature that neither bobcats nor coyotes be included in the list of dangerous wild animals, and neither are specifically mentioned in R.C. 935.01, and the task force recommended that Canadian lynxes, Eurasian lynxes, and Iberian lynxes be included in the definition of dangerous wild animals, and they were, in fact, specifically included in R.C. 935.01.

{¶ 16} ODNR also argues that when the General Assembly meant to exclude specific types of animals in R.C. 935.01, it did so expressly, and if the General Assembly had wanted to exclude bobcats from the definition of "lynxes" it could have employed the language of exclusion. However, under our reasoning above, the legislature would not have needed to specifically exclude bobcats from the definition of "lynxes." If the legislature intended "lynxes" to mean all species commonly referred to as lynxes, as the trial court and this court have found, then specifically excluding bobcats was unnecessary because the common name for a bobcat is not "lynx" but, rather, bobcat. Therefore, we find this argument unavailing.

{¶ 17} For the foregoing reasons, we find the trial court did not err when it found that bobcats were not included in the list of dangerous wild animals set forth in R.C. 935.01(C), and that the denial of appellee's application was not in accordance with law. Therefore, ODNR's first assignment of error is overruled.

{¶ 18} ODNR argues in its second assignment of error that the common pleas court erred and abused its discretion when it made an independent finding not supported by the record that appellee's bobcat was "domesticated." ODNR maintains that there was no evidence submitted indicating that appellee's bobcat was domesticated. However, ODNR's argument concerns the legal definition of a domesticated animal, and our reading of the trial court's use of the term "domesticated" suggests the court was using the term in a layman's sense and not a legal or technical sense. Regardless, even if the trial court erred in this respect, any error would have been harmless, as neither the trial court's decision

nor this court's decision relies upon a finding of domestication. Therefore, we overrule ODNR's second assignment of error.

{¶ 19} Accordingly, we overrule ODNR's first and second assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and HORTON, JJ., concur.

_____