[Cite as *Hetrick v. Ohio Dept. of Agriculture*, 2017-Ohio-303.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Kenneth Hetrick, | : | |
| Appellant-Appellant, | : | |
| | : | No. 15AP-944 |
| v. | : | (C.P.C. No. 15CV-5006) |
| Ohio Department of Agriculture, | : | (REGULAR CALENDAR) |
| Appellee-Appellee. | : | |

D E C I S I O N

Rendered on January 26, 2017

**On brief:** *Karen Novak* and *Timothy J. Walerius*, for appellant. **Argued:** *Karen Novak*.

**On brief:** *Michael DeWine*, Attorney General, *James R. Patterson* and *Lydia M. Arko*, for appellee. **Argued:** *Lydia M. Arko*.

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Appellant, Kenneth Hetrick, appeals a judgment of the Franklin County Court of Common Pleas that affirmed the order of the director of the Ohio Department of Agriculture ("ODA") upholding the transfer of Hetrick's dangerous wild animals to an ODA-approved facility. For the following reasons, we affirm that judgment.

{¶ 2} In 2011, a Zanesville resident created a public-safety crisis when he released numerous dangerous wild animals from his private preserve before committing suicide. In response, the General Assembly enacted the Dangerous Wild Animals and Restricted Snakes Act ("Act"), R.C. Chapter 935, which became effective on September 5, 2012. The

Act and its accompanying administrative rules regulate the possession, care, and housing of dangerous wild animals.

{¶ 3} Pursuant to the scheme created by the Act, the ODA implemented the Act in two stages. First, any person who possessed a dangerous wild animal on September 5, 2012 had to register that animal with the ODA director by November 5, 2012. R.C. 935.04(A). Registration enabled the ODA to collect information regarding the number and kind of dangerous wild animals in Ohio, the names and addresses of the possessors of those animals, and the locations where those animals were confined. Registrants of dangerous wild animals had to permanently implant each animal with a microchip that could identify the animal. R.C. 935.04(D). Additionally, registrants had to comply with certain requirements for the care and housing of the animals. R.C. 935.04(C); Ohio Adm.Code Chapter 901:1-2.

{¶ 4} The second stage of the Act began on January 1, 2014. Starting on that date, it became illegal to possess a dangerous wild animal in Ohio. R.C. 935.02(A). However, that prohibition does not apply to certain people and organizations, including "[a] person whose possession of a dangerous wild animal is authorized by an unexpired permit issued under this chapter." R.C. 935.03(A)(3). Under R.C. Chapter 935, a person who possessed a dangerous wild animal prior to January 1, 2014 could apply for and obtain one of three types of permits: a wildlife shelter permit (R.C. 935.05), a wildlife propagation permit (R.C. 935.07), or a rescue facility permit (R.C. 935.101). Once issued a permit, a permit holder must comply with more specific and onerous care and housing requirements than those applied during the registration stage. *Compare* Ohio Adm.Code Chapter 901:1-2 *with* Ohio Adm.Code Chapter 901:1-4.

{¶ 5} Beginning on January 1, 2014, the ODA director acquired the authority to initiate an investigation if he has reason to believe that:

> (1) A dangerous wild animal is possessed by a person who has not been issued a wildlife shelter permit, wildlife propagation permit, or rescue facility permit * * * [,]
>
> (2) A restricted snake is possessed by a person that has not been issued a restricted snake possession permit or restricted snake propagation permit * * * [, or]

> (3) A dangerous wild animal or restricted snake is being treated or kept in a manner that is in violation of [R.C. Chapter 935] or rules.

R.C. 935.20(A)(1) through (3). For purposes of the investigation, the ODA director or his designee may order the quarantine or transfer of any dangerous wild animals that are the subject of the investigation. R.C. 935.20(A). A transfer entails moving the dangerous wild animals to a facility approved by the ODA director to house the animals. R.C. 935.20(A) and (K).

{¶ 6} Prior to quarantine or transfer, the ODA director must issue a quarantine or transfer order and attempt to notify the person owning or possessing the dangerous wild animals of the order. R.C. 935.20(B). Notice of the order "shall be delivered in person or by certified mail." *Id.* Any person adversely affected by a quarantine or transfer order may request an administrative adjudication of the order in accordance with R.C. Chapter 119. R.C. 935.20(D). After the conclusion of the ODA's investigation and exhaustion of all administrative remedies, the ODA director may initiate proceedings for the permanent seizure of the animals subject to a quarantine or transfer order. R.C. 935.20(H).

{¶ 7} The case at bar concerns the dangerous wild animals owned by Hetrick, a resident of Perrysburg, Ohio. In October 2012, Hetrick registered 15 dangerous wild animals, including lions, tigers, and grizzly bears, with the ODA. Hetrick confined his dangerous wild animals in a series of fenced enclosures and outbuildings located behind his house.

{¶ 8} In November 2013, the ODA notified Hetrick that he had to complete a permit application in order to maintain possession of his dangerous wild animals beyond January 1, 2014. Along with the notification, the ODA supplied Hetrick with application forms for the three different permits available under the Act. In letters dated February 10, 2014 and March 10, 2014, the ODA reminded Hetrick of his obligation to obtain a permit and encouraged him to do so.

{¶ 9} Hetrick did not submit a permit application until October 17, 2014. On that date, Hetrick delivered to the ODA an application for a rescue facility permit. Hetrick's

application indicated that he possessed 13 dangerous wild animals: 6 tigers, 2 lions, 1 bobcat, 1 leopard, 1 brown bear, 1 liger, and 1 cougar.[1]

{¶ 10} In a letter dated October 31, 2014, the ODA pointed out deficiencies in Hetrick's application and requested an on-site visit to verify that Hetrick's facility met the care and caging requirements set forth in Ohio Adm.Code Chapter 901:1-4. Hetrick agreed to the on-site visit.

{¶ 11} On November 7, 2014, ODA representatives, including Melissa Simmerman, the assistant chief of ODA's Division of Animal Health, toured and assessed Hetrick's facility. Simmerman observed the following violations of the care and caging standards: (1) drinking water receptacles contained green film and slime residue, a violation of Ohio Adm.Code 901:1-4-01.2(B); (2) the chain-link fencing throughout the facility was attached to the outside of the fence posts, a violation of Ohio Adm.Code 901:1-4-01.1(D); (3) the perimeter fence was less than eight feet in distance from the primary enclosures, a violation of Ohio Adm.Code 901:1-4-01.1(M)(2); (4) some of the cage-door padlocks were not engaged, a violation of Ohio Adm.Code 901:1-4-01.1(C); (5) the hinge pins on the cage doors all pointed up, which would allow a person to open a door by lifting it off its hinges, a violation of Ohio Adm.Code 901:1-4-01.1(C); and (6) the primary enclosure containing the leopard lacked a roof, a violation of Ohio Adm.Code 901:1-4-05(C)(1).

{¶ 12} After the November 2014 visit to Hetrick's property, the ODA opened an investigation pursuant to R.C. 935.20. On January 27, 2015, the ODA director issued an order requiring the transfer of Hetrick's dangerous wild animals to the ODA's holding facility. The order stated that the ODA director had reason to believe that Hetrick possessed dangerous wild animals without a permit to do so and that the care and housing of Hetrick's dangerous wild animals failed to comply with the standards set forth in Ohio Adm.Code Chapter 901:1-4.

{¶ 13} Around 7:00 a.m. on January 28, 2015, David Hunt, an ODA enforcement agent, knocked on Hetrick's door. Hunt asked Hetrick to voluntarily surrender his

---

[1] A bobcat is not a dangerous wild animal under the Act. R.C. 935.01(C); *Federer v. Ohio Dept. of Natural Resources*, 10th Dist. No. 15AP-104, 2015-Ohio-5368, ¶ 17. However, because Hetrick included the bobcat in his application, we add it to the list of dangerous wild animals Hetrick possessed. Additionally, we note that a "liger" is the offspring of a male lion and a tigress.

dangerous wild animals and allow ODA representatives onto his property so that they could prepare the animals for transport to the ODA facility. Hetrick refused.

{¶ 14} To circumvent Hetrick's refusal, the ODA immediately applied to the Wood County Court of Common Pleas for a search warrant authorizing access to Hetrick's property. The court granted the ODA a search warrant.[2]

{¶ 15} Around 9:00 a.m., Hunt returned to Hetrick's property. According to Hunt, he handed the transfer order and search warrant to Hetrick, and he explained to Hetrick he was serving on Hetrick an order signed by the ODA director and a search warrant signed by a Wood County judge. ODA representatives then removed 11 dangerous wild animals from Hetrick's property.[3]

{¶ 16} Hetrick timely requested an adjudicatory hearing to dispute the transfer order. After considering the evidence adduced during that hearing, the hearing examiner determined that the transfer order was valid, authorized by law, and appropriate under the circumstances. For those reasons, the hearing examiner recommended maintaining the transfer order. In an order issued May 29, 2015, the ODA director affirmed the hearing examiner's report and recommendation, and adopted the hearing examiner's findings of fact and conclusions of law.

{¶ 17} Hetrick appealed the ODA director's May 29, 2015 order to the trial court pursuant to R.C. 119.12. Hetrick then moved to supplement the administrative record with additional evidence relevant to his argument that the ODA violated his due process and equal protection rights. The trial court denied that motion. Both parties filed briefs, which the trial court considered. In a judgment entered September 21, 2015, the trial court affirmed the director's order.

{¶ 18} Hetrick now appeals the September 21, 2015 judgment, and he assigns the following errors:

---

[2] The ODA director or his designee may enter onto premises where dangerous wild animals are confined with the property owner's consent. R.C. 935.19(A)(1). If the property owner refuses to grant consent, the ODA director may obtain a search warrant to enter the premises upon a showing of probable cause that the person who possesses dangerous wild animals is not in compliance with the Act or its accompanying rules. R.C. 935.19(A)(2) and (3).

[3] In his application for a rescue facility permit, Hetrick reported that he possessed 13 dangerous wild animals. However, in the time between the October 2014 submittal of the application and the January 2015 transfer, two of Hetrick's animals—a bobcat and a lion—died.

[1.]   THE COURT ERRED WHEN IT FOUND THAT THERE WAS RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE THAT THE TRANSFER ORDER WAS SERVED ON APPELLANT.

[2.]   THE COURT ERRED WHEN IT DENIED APPELLANT THE OPPORTUNITY TO SUPPLEMENT THE RECORD TO PRESENT EVIDENCE OF VIOLATIONS OF HIS CONSTITUTIONAL RIGHTS[.]

[3.]   [R.C. CHAPTER] 935 IS VAGUE AND WAS APPLIED IN AN ARBITRARY AND HAPHAZARD MANNER[.]

[4.]   THE COURT ERRED WHEN IT CONVERTED APPELLANT'S NOTICE ARGUMENT TO AN ESTOPPEL ARGUMENT[.]

[5.]   THE COURT ERRED IN DETERMINING THAT THE TRANSFER ORDER WAS VALID AND IN ACCORDANCE WITH THE LAW BECAUSE IT VIOLATED APPELLANT'S DUE PROCESS RIGHTS[.]

[6.]   THE COURT ERRED IN DETERMINING THAT THE TRANSFER ORDER WAS APPROPRIATE[.]

[7.]   THE COURT ERRED BY NOT STRIKING APPELLEE'S BRIEF[.]

{¶ 19} Preliminary, we must define the scope of our review. In arguing his assignments of error, Hetrick sometimes includes arguments unrelated to the assignments of error under which they appear. Courts of appeal must determine each appeal "on its merits on the assignments of error set forth in the briefs under App.R. 16." App.R. 12(A)(1)(b). Thus, generally, appellate courts rule on assignments of error only, and do not address mere arguments. *Bonn v. Bonn*, 10th Dist. No. 12AP-1047, 2013-Ohio-2313, ¶ 9. Applying App.R. 12(A)(1)(b) here, we will only review Hetrick's assignments of error, and we will disregard any arguments unrelated to the assignment of error under review.

{¶ 20} Hetrick appeals under R.C. 119.12. Pursuant to R.C. 119.12(M), when a common pleas court reviews an order of an administrative agency, it must consider the entire record to determine if the agency's order is supported by reliable, probative, and substantial evidence and is in accordance with law. To be "reliable," evidence must be

dependable and true within a reasonable probability. *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992). To be "probative," evidence must be relevant or, in other words, tend to prove the issue in question. *Id.* To be "substantial," evidence must have importance and value. *Id.*

{¶ 21} In conducting a review of the administrative record, a common pleas court must "appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof." *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280 (1955). A common pleas court must give due deference to the administrative resolution of evidentiary conflicts, but the court must not treat the agency's findings of facts as conclusive. *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 470 (1993). " 'Where the court, in its appraisal of the evidence, determines that there exist legally significant reasons for discrediting certain evidence relied upon by the administrative body, and necessary to its determination, the court may reverse, vacate or modify the administrative order.' " *Id.* at 470-71, quoting *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 111 (1980).

{¶ 22} An appellate court's review of an administrative order is more limited than that of a common pleas court reviewing the same order. *Bartchy v. State Bd. of Edn.*, 120 Ohio St.3d 205, 2008-Ohio-4826, ¶ 41. Instead of appraising the weight of the evidence, an appellate court determines whether the common pleas court abused its discretion in its examination of the record for reliable, probative, and substantial evidence. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). Absent an abuse of discretion, an appellate court must affirm the common plea court's judgment, even if the appellate court would have arrived at a different conclusion than that of the common pleas court. *Bartchy* at ¶ 42.

{¶ 23} In determining whether an administrative order is in accordance with law, a common pleas court must undertake its reviewing task completely independently. *Ohio Historical Soc.* at 471. Likewise, an appellate court's review on issues of law is plenary. *Bartchy* at ¶ 43.

{¶ 24} By his first assignment of error, Hetrick argues that the trial court erred in concluding that the ODA properly served him with the transfer order. We disagree.

{¶ 25} As we stated above, for purposes of investigation, the director may order the transfer of a dangerous wild animal to an ODA-approved facility. R.C. 935.20(A). Prior to the transfer, the ODA must deliver notice of the transfer order either "in person or by certified mail." *Id.*

{¶ 26} Here, during the administrative hearing, the ODA produced a document, admitted as Exhibit 2, which both Simmerman and Hunt identified as the transfer order for Hetrick's dangerous wild animals. In relevant part, Exhibit 2 states:

**ORDER**

\* \* \*

The Director has reason to believe that the following facts are true:

As of today's date, Kenneth Hetrick is in possession of approximately 12 dangerous wild animals (DWA), does not possess any type of valid permit for possession of the DWA, and is in violation of the care and housing standards under Ohio Revised Code (ORC) Chapter 935.

\* \* \*

On or about November 7, 2014, ODA visited Mr. Hetrick's property and noted serious violations of the care and housing standards required under Ohio Administrative Code Chapter 901:1-4, including over 21 deficiencies of safe housing, proper nutrition, and health of the DWA. The poor housing conditions pose a direct threat to public safety and a direct threat to the health of the DWA due to the poor condition of the animals.

Based on the dilapidated conditions of the cages in which these animals are housed and other numerous care and health violations, these animals must be transferred to a secure location to protect public safety and the health of the animals until the conclusion of this investigation.

Therefore, by the authority vested in my office, it is hereby

**ORDERED**:

1.      In accordance with R.C. 935.20(A), and in furtherance of the ongoing investigation of

Kenneth Hetrick for alleged unpermitted possession of dangerous wild animals, that six (6) tigers, one (1) lion, one (1) Kodiak brown bear, one (1) bobcat, one (1) black leopard, one (1) liger, one (1) cougar and any other dangerous wild animals located on [Hetrick's] property * * * be transferred to the Ohio Department of Agriculture's Dangerous Wild Animal Holding Facility.

2.      That upon journalization a certified copy of this Order be sent to Kenneth Hetrick.

{¶ 27} Exhibit 2 was signed by the ODA director and entered into the ODA's journal on January 27, 2015. Exhibit 2 contains a stamp of the ODA's seal next to the director's signature. According to the last page of Exhibit 2, it was "mailed/hand-delivered" on January 28, 2015.

{¶ 28} Simmerman testified that she obtained a copy of Exhibit 2 from the ODA legal department and gave it to Hunt. Consistent with Simmerman's testimony, Hunt stated that Simmerman gave him a copy of Exhibit 2 on the evening of January 27, 2015. Hunt also testified that he handed a copy of Exhibit 2 to Hetrick on the morning of January 28, 2015.

{¶ 29} Hetrick attacks the foregoing evidence on two bases. First, Hetrick argues that the ODA created Exhibit 2 at the time of the administrative hearing and, consequently, it was not the transfer order used to remove Hetrick's dangerous wild animals. Second, Hetrick argues that the ODA did not deliver any transfer order to him prior to the removal of his animals.

{¶ 30} To support his first argument, Hetrick relies on the existence of a different version of the transfer order, admitted during the administrative hearing as Exhibit B. In substance, Exhibit B parallels Exhibit 2 in virtually every respect. Exhibit B, however, reflects January 26—not January 27—as the date the order was journalized. Additionally, unlike Exhibit 2, Exhibit B lacks the stamp of the ODA's seal, and it states that it was "mailed/hand-delivered" on January 26, rather than January 28.

{¶ 31} Hetrick asserts that only Exhibit B existed on January 28, the date the ODA transferred Hetrick's dangerous wild animals. According to Hetrick, the ODA devised Exhibit 2 for the administrative hearing once it realized that, according to the dates

appearing in Exhibit B, that document was journalized before the ODA director signed it. Hetrick contends that if Exhibit 2 existed in January 2015, then the ODA would have identified Exhibit 2 as the transfer order in a pleading that the ODA had filed in a related, but ancillary, court proceeding. The ODA, instead, attached Exhibit B to its pleading and authenticated it as the transfer order for Hetrick's dangerous wild animals.

{¶ 32} Hetrick's theory regarding the creation of Exhibit 2 does not cohere with Simmerman's and Hunt's testimony. Both Simmerman and Hunt identified Exhibit 2 as the transfer order, and both stated that they possessed a copy of Exhibit 2 on January 27, 2015. Moreover, Simmerman recognized Exhibit 2 as the "correct[ed] final version" of the transfer order because, unlike Exhibit B, Exhibit 2 contained the ODA seal. (Tr. Vol. III at 142.)

{¶ 33} The hearing examiner concluded that Exhibit B was an "incomplete cop[y]" of the transfer order, while Exhibit 2 was the true and accurate order that the ODA relied upon to transfer Hetrick's dangerous wild animals. (Hearing Examiner's Findings of Fact, Conclusions of Law and Recommendation at ¶ 42.) The hearing examiner also concluded that the ODA's attachment of Exhibit B to its court pleading resulted from error, and not the nonexistence of Exhibit 2. The ODA director adopted these factual findings, and the trial court determined that reliable, probative, and substantial evidence supported them.

{¶ 34} Both Simmerman's and Hunt's testimony, as well as the presence of the ODA seal, demonstrate that Exhibit 2 is the transfer order. Thus, we find no abuse of discretion in the trial court's determination.

{¶ 35} In his second argument, Hetrick asserts that the ODA did not deliver any transfer order to him before taking his dangerous wild animals. On this point, the administrative record contains conflicting evidence. As we stated above, Hunt testified that he handed Hetrick the transfer order and search warrant on the morning of January 28. When first called to the stand, Hetrick testified equivocally regarding whether he received the transfer order from Hunt. Hetrick and his attorney engaged in the following colloquy:

> Q.    Okay. To your knowledge, were you ever served a copy
>       of the transfer order?
>
> A.    To my knowledge, no.

Q. Okay. You heard Mr. Hunt testify he served you that document?

A. I heard him say that.

Q. Did you get that document?

A. If I did, it was in -- it was among of the papers on the search warrant.

(Tr. Vol. II at 178.) However, when later recalled to the stand, Hetrick stated with certitude that he received the search warrant and no other document.

{¶ 36} To buttress his contention that he did not get a copy of the transfer order, Hetrick relies on the testimony of Eric Reynolds, the Wood County Chief Deputy. Reynolds was with Hunt on the morning of January 28, and he saw Hunt give paperwork to Hetrick. While Hunt then left to assist in the transport of the animals, Reynolds followed Hetrick inside his house. Once in the house, Hetrick telephoned his attorney to inform her of the unfolding events. When the attorney asked for the statutory authority under which the judge had granted the search warrant, Reynolds examined the first page of the paperwork—the search warrant—in order to determine the answer. At that time, Reynolds did not look through the remaining pages. Reynolds also assisted Hetrick with scanning four pages of the paperwork and emailing those pages to Hetrick's attorney. Reynolds could not recall the substance of the four pages he helped Hetrick scan and email.

{¶ 37} After considering all the foregoing testimony, the hearing examiner found that Hunt hand-delivered both the search warrant and the transfer order to Hetrick on January 28. The ODA director adopted that finding of fact, and the trial court found that finding supported by reliable, probative, and substantial evidence. On appeal, Hetrick argues that Hunt's testimony is internally inconsistent, and consequently, the trial court erred in giving credence to that testimony.

{¶ 38} Hunt testified that he delivered two documents to Hetrick, and Hunt estimated that each document was two-to-three pages in length. From this evidence, Hetrick infers that Hunt delivered to him a total of four-to-six pages. Together, the search warrant (which amounted to five pages, with its attachments) and the transfer order (which totaled three pages) consisted of eight pages. Thus, Hetrick concludes, if Hunt

only gave him four-to-six pages, then Hunt could not have delivered to him both the search warrant and transfer order. Hunt must have only delivered the search warrant, which with its five-page length, fits within the four-to-six page range.

{¶ 39} Whether Hunt delivered both the search warrant and the transfer order, or only the search warrant, was an issue of fact for the hearing examiner to determine in the first instance. Although the inference that Hunt delivered a total of four-to-six pages arguably supports Hetrick's argument that Hunt delivered only the search warrant, the hearing examiner could have believed Hunt's testimony that he hand-delivered the search warrant and the transfer order to Hetrick and simply misestimated the number of pages in the search warrant. Given Hunt's testimony, and the small discrepancy between Hunt's estimate and the actual number of pages in the search warrant, the trial court did not abuse its discretion in its examination of the record for reliable, probative, and substantial evidence.

{¶ 40} Hetrick also argues that the trial court should have disregarded Hunt's testimony for a variety of other reasons, i.e., Hunt initially called the transfer order a letter, Hunt could not recall whether he handed Hetrick the search warrant and transfer order together or separately, and Hunt must have misremembered the number of documents he retained in a manila folder he had with him on January 28. None of Hetrick's issues with Hunt's testimony causes us to believe that the trial court abused its discretion in finding that Hunt's testimony regarding delivery of the documents constituted reliable, probative, and substantive evidence.

{¶ 41} Next, Hetrick argues that the trial court and hearing examiner violated his right to procedural due process by failing to fully consider the entirety of Hunt's and Reynolds' testimony. Hetrick correctly points out that due process requires decision-makers to consider and appraise all the evidence in some meaningful manner. *State ex rel. Sigler v. Lubrizol Corp.*, 136 Ohio St.3d 298, 2013-Ohio-3686, ¶ 15. Here, however, there is no reason to believe that either the trial court or the hearing examiner ignored evidence. Hetrick bases his argument to the contrary on the mere assumption that each decision-maker only considered the testimony specifically discussed in the relevant decision. We do not share in that assumption, particularly with regard to the trial court,

which expressly considered all the record evidence. Consequently, we conclude that Hetrick failed to prove a procedural due-process violation.

{¶ 42} In sum, we conclude that the trial court did not abuse its discretion in concluding that the ODA personally delivered a copy of a valid transfer order to Hetrick before transferring his dangerous wild animals out of his possession. Accordingly, we overrule Hetrick's first assignment of error.

{¶ 43} By Hetrick's second assignment of error, he argues that the trial court erred in denying his motion to supplement the record with additional evidence. We disagree.

{¶ 44} R.C. 119.12(K) controls the circumstances under which a common pleas court can supplement the administrative record with additional evidence. It states that:

> Unless otherwise provided by law, in the hearing of the appeal, the court is confined to the record as certified to it by the agency. Unless otherwise provided by law, the court may grant a request for the admission of additional evidence when satisfied that the additional evidence is newly discovered and could not with reasonable diligence have been ascertained prior to the hearing before the agency.

*Id.* Thus, under R.C. 119.12(K), a common pleas court may exercise its discretion to admit additional evidence, but only if it first determines that (1) the additional evidence is newly discovered and (2) a reasonably diligent search prior to the administrative hearing would not have ascertained the evidence. *Jain v. Ohio State Med. Bd.*, 10th Dist. No. 09AP-1180, 2010-Ohio-2855, ¶ 17.

{¶ 45} Here, Hetrick does not even argue that the additional evidence he wishes to produce is newly discovered and could not have been discovered prior to the administrative hearing. Hetrick, instead, argues that the trial court should have supplemented the record with evidence he needs to prove his as-applied constitutional challenge because the hearing examiner excluded it.

{¶ 46} An as-applied constitutional challenge alleges that the application of a statute in the particular context in which the party has acted, or proposes to act, would be unconstitutional. *Wymsylo v. Bartec, Inc.*, 132 Ohio St.3d 167, 2012-Ohio-2187, ¶ 22. When a party seeks to assert an as-applied challenge in the administrative context, the party must first raise the challenge before the agency itself in order to develop the necessary factual record. *Id.* at ¶ 20, 22; *accord Bd. of Edn. v. Kinney*, 24 Ohio St.3d 184,

185-86 (1986) ("One who challenges the constitutional application of legislation to particular facts is required to raise that challenge at the first available opportunity during the proceedings before the administrative agency. * * * Otherwise, it would be impossible to develop the factual record necessary for the resolution of the case."). Thus, generally, a party must introduce all the evidence supporting its as-applied constitutional challenge during the administrative hearing. Unless the evidence satisfies the R.C. 119.12(K) criteria, a party cannot rely on R.C. 119.12(K) to supplement the administrative record with evidence relevant to an as-applied constitutional challenge. *Zieverink v. Ackerman*, 1 Ohio App.3d 10, 11-12 (1st Dist.1981).

{¶ 47} An agency's refusal to admit evidence regarding an alleged constitutional violation presents a significant obstacle to a party's ability to prove its as-applied challenge. Nevertheless, given the restrictions contained in R.C. 119.12(K), that division cannot serve as the vehicle through which a party introduces excluded evidence. *Sicking v. State Med. Bd.*, 62 Ohio App.3d 387, 393 (10th Dist.1991). A party who attempts to admit evidence during an administrative hearing obviously knew of the existence of that evidence prior to the administrative hearing. Excluded evidence, then, by definition, cannot qualify as newly discovered evidence.

{¶ 48} However, a party is not without a remedy when a hearing examiner has refused to allow the admission of evidence necessary for an as-applied constitutional challenge. If a hearing examiner excludes evidence, a party may proffer that evidence so that it will appear in the certified record. R.C. 119.09 ("[I]f the agency refuses to admit evidence, the party offering the same shall make a proffer thereof, and such proffer shall be made a part of the record of such hearing."). Any court reviewing that record on appeal can then assess the hearing examiner's evidentiary ruling and, if appropriate, consider the evidence to resolve the party's as-applied constitutional arguments.

{¶ 49} Here, Hetrick complains of three instances in which he says the hearing examiner refused to allow him to introduce evidence relevant to his as-applied constitutional challenge. However, in one of those instances, the hearing examiner actually allowed the objected-to questioning, and, in the other two instances, the hearing examiner permitted Hetrick to proffer the evidence he sought to introduce. Thus, it appears that, in moving to admit additional evidence, Hetrick actually sought to

supplement the record with evidence he never attempted to present during the administrative hearing. Hetrick failed to prove that that evidence was newly discovered and could not have been discovered prior to the administrative hearing had he exercised reasonable diligence. Accordingly, the trial court did not abuse its discretion in denying Hetrick's motion to supplement the record, and we overrule Hetrick's second assignment of error.

{¶ 50} By Hetrick's third assignment of error, he asserts two arguments: (1) the ODA misapplied R.C. 935.20 to him because it held him to the wrong care and housing standards, and (2) the ODA violated the Ohio Constitution by applying R.C. 935.20 in an arbitrary and haphazard manner. We conclude that Hetrick waived the first argument, and we find the second argument unpersuasive.

{¶ 51} As we stated above, the ODA director may transfer dangerous wild animals for the purposes of an investigation opened because the ODA director has reason to believe that one of the conditions in R.C. 935.20(A) exists. One of those three conditions is that "[a] dangerous wild animal * * * is being treated or kept in a manner that is in violation of this chapter or rules." R.C. 935.20(A)(3). Here, the ODA director determined that Hetrick was treating and keeping his wild dangerous animals in a manner that violated various provisions of Ohio Adm.Code Chapter 901:1-4. The ODA director relied on that determination to open an investigation and order the transfer of Hetrick's animals.

{¶ 52} Hetrick now argues that the standards contained in Ohio Adm.Code Chapter 901:1-4 do not apply to him or his dangerous wild animals. Ohio Adm.Code Chapter 901:1-4 governs the care and housing of dangerous wild animals "possessed by the holder of a wildlife shelter permit, a wildlife propagation permit, or a rescue facility permit issued under Chapter 935. of the Revised Code." Ohio Adm.Code 901:1-4-01(A). Hetrick, who does not hold any of those types of permits, contends that he must, instead, comply with the care and housing standards of Ohio Adm.Code Chapter 901:1-2. Those standards apply to dangerous wild animals merely "registered with the [ODA] pursuant to section 935.04 of the Revised Code." Ohio Adm.Code 901:1-2-01(A).

{¶ 53} We will not address the merits of this argument because Hetrick waived it. Generally, the failure to present an argument before an administrative agency constitutes

waiver of that argument on appeal. *Edmands v. Ohio State Med. Bd.*, 10th Dist. No. 14AP-778, 2015-Ohio-2658, ¶ 18. Here, Hetrick did not raise the argument set forth above before the ODA or the trial court. Consequently, he has waived it, and we decline to address it.

{¶ 54} Next, Hetrick argues that the ODA violated the Ohio Constitution by ordering the transfer of dangerous wild animals under R.C. 935.20 on an inconsistent and arbitrary basis. To support this argument, Hetrick points to the testimony of Dominic D'Urso, a former dangerous wild animal inspector for the ODA. D'Urso testified that the ODA typically issues a noncompliance report when its inspectors find violations of Ohio Adm.Code Chapter 901:1-4. The noncompliance report gives the possessor of the dangerous wild animal a remediation deadline and the date on which a re-inspection will occur. Additionally, D'Urso testified that, if a facility's perimeter fencing meets the spirit of the law, the ODA will overlook the failure to strictly comply with the applicable regulation.

{¶ 55} Relying on D'Urso's testimony, Hetrick argues that the ODA treated him differently than other people who possess dangerous wild animals. The ODA did not use the typical noncompliance procedure with Hetrick, nor did it overlook deficiencies in his perimeter fencing; instead, the ODA removed Hetrick's animals from his care. Thus, Hetrick argues, the ODA used its power to investigate and transfer inconsistently and arbitrarily.

{¶ 56} Although Hetrick claims that the ODA's arbitrary application of R.C. 935.20 is unconstitutional, Hetrick fails to specify which constitutional provision the ODA's actions violated. This failure complicates our analysis. Based on the sole case Hetrick cites, we surmise that Hetrick is asserting a violation of substantive due process. "[A] substantive due process violation occurs when arbitrary and capricious government action deprives an individual of a constitutionally protected property interest." *Warren v. Athens*, 411 F.3d 697, 707 (6th Cir.2005). Challenges to arbitrary and capricious governmental action most often appear in cases involving zoning and other ordinances, like the case Hetrick cites. *Id.* However, such challenges are not limited to such cases. *Id.*

{¶ 57} Hetrick has a limited property interest in his dangerous wild animals, but his ownership of his animals does not rise to the level of a constitutionally fundamental

property interest.  *Wilkins v. Daniels*, 913 F.Supp.2d 517, 536 (S.D.Ohio 2012), *aff'd*, 744 F.3d 409 (6th Cir.2014).  Because Hetrick cannot demonstrate the deprivation of a constitutionally protected property interest, he cannot prevail on his substantive due-process argument.

{¶ 58} In sum, we are not persuaded by either of the two arguments Hetrick asserts under his third assignment of error.  Accordingly, we overrule the third assignment of error.

{¶ 59} We next address Hetrick's sixth assignment of error, by which he argues that the trial court abused its discretion in concluding that reliable, probative, and substantial evidence supported the ODA's determination that Hetrick violated the care and housing standards for his dangerous wild animals.  We disagree.

{¶ 60} We cannot address much of Hetrick's argument because Hetrick focuses on showing that he did not violate the provisions of Ohio Adm.Code Chapter 901:1-2.  As we decided above, Hetrick waived the argument that the standards in Ohio Adm.Code Chapter 901:1-2, rather than Ohio Adm.Code Chapter 901:1-4, applied to his dangerous wild animals.  We, consequently, will focus only on whether the evidence demonstrates violation of Ohio Adm.Code Chapter 901:1-4.

{¶ 61} As we stated above, Simmerman testified that, when she visited Hetrick's property on November 7, 2014, she observed multiple violations of Ohio Adm.Code Chapter 901:1-4, including:  (1) drinking water receptacles containing green film and slime residue, a violation of Ohio Adm.Code 901:1-4-01.2(B); (2) chain-link fencing attached to the outside of fence posts, a violation of Ohio Adm.Code 901:1-4-01.1(D); (3) perimeter fencing less than eight feet in distance from the primary enclosures, a violation of Ohio Adm.Code 901:1-4-01.1(M)(2); (4) the failure to engage the padlocks on cage doors, a violation of Ohio Adm.Code 901:1-4-01.1(C); (5) the hinge pins on cage doors all pointing up, which would allow a person to open a door by lifting it off its hinges, a violation of Ohio Adm.Code 901:1-4-01.1(C); and (6) the lack of a roof on the primary enclosure containing the leopard, a violation of Ohio Adm.Code 901:1-4-05(C)(1).  The hearing examiner relied on Simmerman's testimony to find that Hetrick was not in compliance with the care and housing regulations when the ODA director issued the

transfer order. The ODA director adopted that factual finding, and the trial court found that reliable, probative, and substantial evidence supported it.

{¶ 62} Hetrick first argues that Simmerman's observations are not reliable, probative, and substantial evidence of the care he gave his animals because: (1) Simmerman made those observations over 80 days before the ODA director issued the transfer order, and (2) Simmerman only visited Hetrick's property one time. While Hetrick identifies two reasons to reject Simmerman's testimony, the trial court did not find these reasons sufficient to override the deference it owed to the ODA's factual findings, which relied on Simmerman's testimony. We are not persuaded that the trial court abused its discretion in so concluding.

{¶ 63} Hetrick next argues that he had substantially complied with the housing regulations on the date that the ODA director issued the transfer order. For this proposition, Hetrick relies on the testimony of Edward Rocco, the owner of American Fencing Supply. Rocco first examined the fencing on Hetrick's property in early February 2015. While Rocco testified that Hetrick's enclosures were "secure enough," he also admitted that the perimeter fence was not eight feet from the primary enclosures and that the primary enclosure housing the leopard did not have a roof. (Tr. Vol. II at 115, 119-20.) Thus, even according to Hetrick's own witness, violations of Ohio Adm.Code 901:1-4-01.1(M)(2) ("Secondary enclosures shall * * * [b]e a minimum of eight feet from the nearest primary enclosure.") and Ohio Adm.Code 901:1-4-05(C)(1) (for leopards, "the primary enclosure shall * * * [include] a roof") were occurring on the date the ODA director issued the transfer order.

{¶ 64} Based on our review of the totality of the evidence, we conclude that the trial court did not abuse its discretion in finding that reliable, probative, and substantial evidence supported the ODA director's determination that Hetrick was treating and keeping his animals in a manner that violated Ohio Adm.Code Chapter 901:1-4. Accordingly, we overrule Hetrick's sixth assignment of error.

{¶ 65} Given our resolution of Hetrick's third and sixth assignments of error, his fourth and fifth assignments of error are moot. The ODA director based his transfer of Hetrick's dangerous wild animals on his finding that (1) Hetrick was violating Ohio Adm.Code Chapter 901:1-4 and (2) Hetrick did not have a permit. Either of these bases

independently justified the transfer of Hetrick's dangerous wild animals. By Hetrick's fourth and fifth assignments of error, he challenges the second basis for transferring the animals, i.e., his lack of a permit. More specifically, Hetrick argues that the ODA director violated his rights to due process and equal protection when he denied Hetrick a permit. However, because we have found no error in the director's reliance on the first basis for transfer—the violation of Ohio Adm.Code Chapter 901:1-4—we need not review the record for error in the second basis. Our ruling regarding the first basis, alone, upholds the director's decision to transfer the animals. Thus, the fourth and fifth assignments of error, which challenge Hetrick's lack of a permit, are moot.

{¶ 66} By Hetrick's seventh assignment of error, he argues that the trial court erred by refusing to strike the ODA's brief for exceeding the page limitation. We disagree.

{¶ 67} Pursuant to Loc.R. 12.01 of the Franklin County Court of Common Pleas, General Division:

> A supporting or opposing memorandum or brief including administrative appeals, shall not exceed fifteen (15) pages exclusive of any supporting documents. Any supporting or opposing memorandum or brief which exceeds fifteen (15) pages shall not be accepted for filing without prior leave of the Court.

"The enforcement of local court rules is well within the sound discretion of the court, including the power to strike a brief that does not comply with such rules." *Boggs v. Ohio Real Estate Comm.*, 186 Ohio App.3d 96, 2009-Ohio-6325, ¶ 42 (10th Dist.).

{¶ 68} Here, the ODA's brief only exceeds 15 pages in length if the cover page counts toward the page total. Apparently, the Franklin County Clerk of Courts did not count the cover page, because it accepted the brief for filing. After the filing of the brief, Hetrick moved the trial court to strike the ODA's brief for noncompliance with the page limitation. The trial court found that the sanction requested was excessive in light of the ODA's minor transgression, and it denied Hetrick's motion. We find the trial court's reasoning and ruling reasonable and, thus, not an abuse of discretion. Accordingly, we overrule Hetrick's seventh assignment of error.

{¶ 69} For the foregoing reasons, we overrule Hetrick's first, second, third, sixth, and seventh assignments of error. By overruling the third and sixth assignments of error,

we render moot Hetrick's fourth and fifth assignments of error.  We affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and SADLER, JJ., concur.

———————————